Case 19-3520, John Doe v. Case Western Reserve University, et al., argument not to exceed 15 minutes per side. Mr. Dooley, you may proceed for the appellant when ready. Good morning, members of the panel. May it please the Court. My name is Matt Dooley. I'm here before you this morning representing John Doe, the appellant in this matter, and I've asked for three minutes for rebuttal. Mr. Doe is asking this Court to reverse the trial court's decision in his case granting summary judgment to Case Western Reserve on two principal claims that he brought in his complaint. The first is his Title IX claim, which was brought under an erroneous outcome theory. The second is his breach of contract claim. To prevail in a Title IX case under an erroneous outcome theory, a plaintiff must first show some articulable doubt in the accuracy of the outcome of the proceeding. If he satisfies that prong, he must show some causal nexus between the outcome and some gender bias. In this particular case, the best evidence of articulable doubt would be the denial of his right to cross-examine witnesses and to confront his accuser in this case. Well, didn't he kind of weigh that? At least that's the theory, because he was given the choice of having a full hearing, and he took the administrative route. Your Honor, that's a very good question, and one that I think the factual record shows otherwise, and I'll tell you why I say that. And I have to get to my breach of contract claim to kind of lay the foundation for why he could not actually make that choice. First, he never received a copy of the policy that described the various hearing procedures until a week before the hearing. A week is a pretty long time. I mean, he's a college student, and presumably he can read and take in what it says within a week. Your Honor, what I mean by that is, and let me put some dates in front of, put context into this. This investigation began in December. The hearing was on February the 25th, 2015. He received, the objective evidence in the record indicates he received a copy of the policy, the sexual misconduct policy, on February the 18th, 2015. Now, why is that important? It's important because when he was first summoned into the Title IX Investigator's Office, he never had a copy of the policy, therefore he had no idea what his rights were. The notion that he chose the hearing, Judge Seiler, I think is important to understand that he didn't have the policy and couldn't understand what his hearing options were. His testimony was he didn't want witnesses, meaning his friends, he didn't want his fraternity brothers to be brought into the process. Isn't that the real difference between the two procedures? One has witnesses and one doesn't. And he sort of expressly disclaimed the major feature of the broader hearing, which is witnesses, and then come part and parcel with that, maybe some cross-examination. Judge Reeder, the other important fact there is that the accuser, in this case the complainant, Jane Doe, would have alleged, perhaps participated in the more formal hearing process. The administrative hearing doesn't require her to participate, and she did not participate in this case. Now, that's important because the fact finder, the ... I'd have to say that again for me, because I don't understand how that ... If there had been a formal hearing, a panel hearing as it's called in this case, then the accused, John Doe, could have cross-examined or asked questions of the accuser. He didn't have that right. I know. I mean, if you're not going to have witnesses, there's no one to cross-examine. So, essentially, the choice not to have witnesses precludes any cross-examination. There's a distinction, I think, Your Honor, between having outside witnesses and being able to cross-examine your accuser. What Mr. Doe was saying is, I don't want to bring my friends into this. At no point did he say he didn't want to have a chance to ask questions of his accuser. What's important about that is there was no credibility determination. This court has said in Doe v. Baum that when credibility is at stake ... In a due process context, we said that. Your Honor, with all due respect, in the Title IX analysis that followed the due process discussion, the court said if the plaintiff can show that there was no right to cross-examination, he has at least met the articulable doubt standard. He admitted that. That's not exactly what Baum says, I don't think. When cross-examination ... As you may know, I was on the Baum panel, and when I looked at this yesterday, when cross-examination is mentioned in the Title IX discussion, as opposed to the due process discussion, it's mentioned as merely a factual matter that goes with a lot of other things to support the finding that the Title IX claim survived dismissal. It's not discussed in the context of Title IX giving a right to cross-examination. That's not why the mention of it is there. The important issue here, Your Honors, is there was no assessment of the accuser's credibility. The testimony in the record is that the hearing officer, Mr. O'Connell, he could not recall having any conversation with the accuser. The Title IX investigator, Dr. Milliken, is the only person that actually interviewed the accuser and the accused. Now I want to circle back to the Title IX claim, because I also realize I have to prove to you that there is evidence of bias, and I want to get to that point. Can we just talk about sort of the guilt part of this? Your client admitted to violating the policy, as I understand the record. Your Honor, he did not. That seems like a ... You can tell me why he didn't, but that would seem like a pretty big hurdle to saying there was an erroneous outcome here. Your Honor, he did not admit to violating the policy, and the best evidence of that is in the record at 75-1. That is the investigative summary that was prepared by Dr. Milliken and outside counsel. In that summary, on the very first page, there's a heading, Disputed Facts. This is prepared after interviewing both the complainant and the accused, and there were two key disputed facts identified on the cover of that document. One, whether vaginal sex occurred, and two, whether oral sex occurred. What about digital penetration? That's a violation of the policy, correct? It is a violation of policy if it was without consent. What the record shows is that this particular couple, John Doe and Jane Doe, had engaged in that behavior before, and there was no evidence that in that particular encounter there was a complete absence of consent. What's important is the hearing officer did not rest his decision on that issue. He rested his decision as well on whether there was vaginal sex. How do you say that? I do think this is an important distinction, and I want to ask your friends on the other side about it. I read the record as your client essentially conceding digital penetration. You're raising a question about whether there was consent. The acts that immediately followed that are more in dispute. Why is it that the hearing officer's decision turned on the latter as opposed to the former, which was arguably conceded? Because I read that opinion, and I don't think it's clear really either way. I agree that the hearing officer's opinion is less than clear on which of the alleged violations he actually focused his decision on. I agree with that. But it's important that he discusses the vaginal sex, the oral sex, and chooses to believe the complainant over the accused without making an independent credibility assessment. That's what I think is important here. There's no evidence that he actually assessed the credibility of the accuser on whether vaginal sex took place or oral sex took place. So suppose we go back to the digital penetration, and that's not as contested. Maybe there's some question about consent, but the hearing officer would otherwise be within his rights to find that to be a violation and to punish your client accordingly. Setting aside these other two disputed matters, there was arguably at least one violation. That may be true, Your Honor. However, the final disposition, the sanction in this case, could have been different. We don't have a way to measure what the hearing officer might have done had he not also found vaginal sex and oral sex took place. It's important that he found that both of those things additionally took place when he sanctioned and suspended my client. If it was just the one form of penetration, not the other, you're saying it may have been a lower penalty? It's possible. It's hard to say because the hearing officer's opinion does not distinguish the various acts or make a conclusion that his final recommendation or his sanction is based on one versus another. Does the university have a sort of, we have the sentencing guidelines, I'm not encouraging them to adopt anything like that, but do they have a scorecard, a slate of punishments that typically correspond with certain kinds of conduct? No, Your Honor. There is nothing akin to sentencing guidelines in a case like this. I want to turn to the breach of contract claim as well. The breach of contract claim is based on the fact that Case Western did not follow its own policy in this case. It's important to understand that when an accused is brought in, he has a right to know what he's accused of. Now the facts leading up to Mr. Doe coming into the Title IX coordinator's office are as follows. He receives a calendar invite from the secretary for the Title IX coordinator. It says nothing exactly about why he's to come. He Googles Dr. Milliken, realizes she's a Title IX coordinator, but it's not clear whether he's being summoned as an accused or a witness in another case or for some other purpose. He's just told to go there. He does. At that time, he's not given a copy of the policy. The policy would have told him and could have been reviewed by Dr. Milliken. The policy says you do not have to make statements. It's akin to a right to remain silent, for lack of a better phrase. It also says you have the right to a support person with you during that initial inquiry. He was not afforded that right. The record indicates that during his conversations with Dr. Milliken, at one point he was crying in the fetal position on her office. This was a very traumatic event. He was denied the right to have a support person in any sense. On top of that, without having any idea why he was there, he couldn't prepare. That same theme of being unable to prepare led up to the hearing. Judge Gibbons, you had commented about the time between receiving the policy and the hearing and the week span there. What's also important is he didn't have a chance to review the file before the hearing except for that day, the day of the hearing. He had tried to make arrangements beforehand to go to Dr. Milliken's office and review the file. He went there, as agreed, and she wasn't there and he was unable to review the file. At what time did your client decide that he wanted to have a full-fledged hearing and right to cross-examine? Was it after all this was over or the day after Dr. Milliken talked to him or the next week or never? Your Honor, he never communicated with Case Western that he wanted to have a quote-unquote panel hearing. I don't think he understood exactly what the distinctions were. But here's another important part about that. Whether he wanted a panel hearing or not doesn't matter because the Case Western policy says a panel hearing is required where either the complainant wants it and there has to be a dispute about core facts. And 75-1 is the best evidence that Case Western itself considered there to be a dispute over core facts. That is whether vaginal sex occurred or oral sex occurred. I realize I'm running against my 12 minutes. Thank you. May it please the Court. Plaintiff told the District Court that he could satisfy the first element of his Title IX discrimination claim by pointing to the absence of cross-examination and to this Court's opinions in Doe v. Baum and Doe v. University of Cincinnati. That argument fails for three reasons. First, unlike the plaintiffs in those other cases, plaintiff here had no constitutional right of cross-examination because Case Western is a private university. The Supreme Court and this Court have been quite clear that due process rights, including rights of cross-examination, belong to private actors against the government and not against other private actors. Applying Baum here would cross that line and be an unwarranted expansion of constitutional rights into purely private matters. I would defer to Judge Gibbons a little bit. She knows the case quite well, but Baum, I think, centered its due process analysis on the fact that sometimes facts are contested and the best way to test contested facts is through cross-examination. Why isn't that principle equally true in the Title IX? Whether it may be the best way is not the issue when the Constitution is not involved. I can't recall the case right now, but the Court in this role is not an advocate for only whatever is under the policy. As Judge Seiler said, and my second reason that this argument fails is, of course, the plaintiff in this case chose the administrative process that had no witnesses. With respect to Title IX, we are asked to measure whether there was an erroneous outcome and whether there's more of a systemic problem at the university with respect to its handling these kinds of cases. A complete denial of cross-examination might show either a problem in one case or a more systemic problem. It seems like it's at least relevant to the outcome, and if it's a contested case, maybe there'd be reasons why Title IX might implicate in some settings some cross-examination. It's possible that in some other case it would, Your Honor, but in this case, of course, we know that the plaintiff chose the administrative process that provided for no questioning of witnesses instead of the more elaborate board procedure that would have allowed for witnesses. Whatever right plaintiff might have had otherwise, constitutional or otherwise, he waived it. And he similarly failed to take advantage of the available process by failing to internally appeal the finding of sexual misconduct. Third, and to your point about cross-examination being the best way perhaps to determine the truth, even in a public university setting, even when the constitutional right is in play, the cases make clear that there's no right of cross-examination when critical facts as to the misconduct have been admitted by the accused. And here, it's important to note that plaintiff presented no argument or evidence to the district court denying any of the sexual misconduct. That's an argument he's making on appeal, but there was no evidence or argument submitted to the district court on that point. And of course, the record- The fact question that your adversary alluded to was not a part of his- That's correct. The record also shows, of course- The fact that whether he denied a violation of policy? That's right. There's no evidence that this whole dispute about which kinds of sex he did or did not engage in was not presented to the district court. But the record, of course, affirmatively shows, as Judge Riedler, you pointed out- It's Riedler for everybody. Riedler, I apologize. I'm just new. I'm trying to make sure. Plaintiff affirmatively admitted the facts showing that he engaged in non-consensual sexual intercourse under the policy. He admits he knew Jane was uncomfortable with the sexual activities that they had previously engaged in. And he said, quote, I understood she did not want to have oral sex or sex of any kind. He admits that that night she was pretty intoxicated and not capable of consent. He admits that he nonetheless did as he had done before and digitally penetrated her and performed oral sex on her. As to the question of what oral sex, there is some dispute because, of course, the term oral sex is used whether a man is performing oral sex or receiving oral sex. That is cleared up, by the way, in the deposition in which he says he did not have her perform oral sex on him, but he does admit that he performed oral sex on her, which he just acknowledged in his statement. He knew she did not want to. Suppose I read the record to think that maybe there was an omission with respect to digital penetration, but any other sort of form of sexual contact or assault is in question, is denied. The opinion of the hearing officer or administrator doesn't really distinguish, but it sort of mentions in the facts section, it mentions all this conduct. When it meets out the punishment, it doesn't really distinguish between these, at least by my reading. I'm not sure what to do with all that. What I would point to is the decision, Mr. O'Connell's statement, that at no point in either discussion did you or Jane indicate that Jane had given clear consent for either act of oral sex, digital penetration, or vaginal sex. He's finding that there's no consent at all for any of this conduct. That's exactly, of course, what the plaintiff himself had admitted to, that she was not capable of giving consent. All of the sex, it was non-consensual at that point, and he had certainly admits to performing oral sex and to digitally penetrating her, and that's a violation of the policy. I understand fully the issues that the admission causes for the appellant. I understand those difficulties. On the other hand, it strikes me there's just something very unappealing about the fact that the university did not make every effort on the front end prior to the plaintiff's making the statements that he made to make sure that he knew the policy, that he knew what his choices were, and that he had some idea of how much trouble he was in, because the penalties in these cases are so . . . the ones I've seen tend to be pretty severe for a young person. The whole thing strikes me as just an unpleasant picture for the university, and that's just more a comment than a legal observation. I appreciate that, Your Honor. There's no question this is an unfortunate circumstance for all involved. I would also like to address the plaintiff has made an additional argument about cross-examination in his reply brief, and here this morning, that the administrative process the plaintiff chose should have never been an option under the policy. Again, plaintiff never raised that argument in the district court, and therefore can't raise it here, especially for the first time in a reply brief, but the argument's also wrong. The administrative process is available whenever the accused has admitted sexual misconduct, and furthermore, parties to a contract are always free to waive their rights. Right, and so arguably the accused admitted some form of misconduct. That's correct. But didn't admit other forms of misconduct, and the opinion itself, again, refers to all of them. I'm having a little trouble with that idea, because if it is contested, it sounds like you typically go the other route. Again, this is what plaintiff explicitly said that he wanted. He wanted this process. And even if he had a contractual right to the other process, and he could have chosen it, he certainly was free to waive it. Because it's a Title IX claim, it's fundamentally just... I'm sorry, go ahead. One of the points your friend on the other side raised was sort of notice that he didn't actually have this information available to him at the time, and he was sort of blindsided by his allegations and kind of made a rash decision without a support person there. I intend to explore that when I get to the contract claim, but I will briefly address it now since you've raised it, Your Honor, of course. And that is this, that there's nothing in the policy that puts a mandate on the university to tell him about the rights that are in the policy, and furthermore, the plaintiff has not cited any authority that one party to a contract has to tell the other party what his rights are under the contract, and in fact, of course, the law is exactly the opposite. When a party accepts a contract, which plaintiff told the district court, I accepted this contract, and then he sued on it. When a party accepts a contract, he is conclusively presumed to know what that contract says. What is the evidence that a student accepts the contract merely by enrolling at the institution? What process is available for the student to say, okay, yeah, I'm bound by that, I understand I'm a student here. That is what he told the district court, that he had accepted the terms of the contract. Well, let's say, apart from what he told the district court, what's the evidence that he did accept the contract? There's a breach of contract claim here, so either he's a party to a contract or he has no claim whatsoever. Frankly, I'm happy either way. On the Title IX claim, which fundamentally is a gender discrimination claim, and there's no evidence to support gender discrimination here by anyone. Universities are entitled to a presumption of impartiality, absent a showing of actual bias. Judge Gibbons, I believe you wrote that in Doe versus Cummins. For supposed evidence of actual gender bias in this case, plaintiff relied on the district court on Dr. Milliken's dissertation, but the 88-page dissertation is from beginning to end all about consensual sex. It's all about the causes and effects of college women choosing consensual, casual, sexual risk takers. Back to the policy, which maybe goes more to breach of contract, but also to Title IX. Does the university have a standard policy if someone's accused and brought in? Do they remind them of the contract that they agreed to? I guess when they had enrolled in the university sometime before, because the gist of the argument is not that maybe he agreed to it at one point, somewhat unknowingly, and we do hold people their contracts, but in this specific circumstance, he wasn't reminded of his rights. I'm glad that you raised it again in the sense that the plaintiff obviously knew. From the record, it's clear that he knew there was a policy during the process, certainly. Maybe not before the first meeting. I can't say if he knew for sure, although he did say that he was aware of, I think in the pleadings, even in his complaint, that he was aware of a sexual misconduct policy when he enrolled in the first place, and then he had it, and then he saw it. As to the changes to it subsequently, it's not clear, but during the process of talking to Dr. Milliken, he certainly became aware that there was a policy because they talked about the policy. And here's what he testified. He said he didn't ask for a copy because it wasn't important to him. So I can't say much more than that, other than the plaintiff, in this case, at every stage along the way, gave up whatever rights he might have had. Back to the gender bias. The dissertation does not show any bias by Dr. Milliken, and in Doe v. Miami, this court found that actually researching male sexual assault against women did not show that the researcher had a bias against men, so surely her research in consensual sex didn't. If anything, it shows the opposite. It shows that Dr. Milliken was fully aware of the fact that college women do increasingly choose casual sex, so there's no bias towards men or any bias towards assuming that men force themselves on unwilling women. Plaintiff's argument boils down to a circular one in which he simply alleges gender discrimination, points to things he didn't like about the investigation, and then concludes that must have been because of gender discrimination. But what's missing is any actual evidence of gender discrimination here, any actual evidence that anybody treated the plaintiff any differently because he was a man. In fact, the record here shows exactly the opposite. It shows a similarly situated woman who had been accused of performing sex against the will of a male who had been incapacitated, and the consequence for that woman in that case was even harsher than the one for plaintiff. There's simply no gender bias, certainly not by Dr. Milliken, and in any event, Dr. Milliken was not the decision maker. Mr. O'Connell was, and he was no mere cat's paw. The record shows, contrary to what my friend has said, the record shows that per his usual practice, Mr. O'Connell reviewed the information provided by both parties and signed off on by both parties and met individually in person with both of them. But the punishment had been different? Had the opinion turned only on digital penetration and not included discussion of other acts that may or may not have occurred? There's nothing in the record to say, Your Honor, as far as I know, but the reality is that Mr. O'Connell concluded that all the sexual acts were performed without consent and therefore were a violation of the policy, and may I also say that the district court made a specific factual finding that Mr. O'Connell made that credibility determination where there were disputes over the vaginal sex, made that credibility determination independently, and that, of course, is only revealable for clear error factual finding. On the contract, as I mentioned, the law is exactly the opposite as to saying that you have to tell a party what his rights are under the contract, and I point the court to Glenn Hunter versus Union Pacific, citing Amger and Haskins versus Prudential, both of those cases from this court. There's no mandate they have to give him a copy of the policy, but as I said, he knew full well that there was a policy, and he also, of course, knew exactly what the complaint against him was. He got a calendar invite to meet with the sexual misconduct investigator, with the Title IX sexual misconduct investigator. What did he do when he got that? He went and talked to Jane. So he knew what it was about, and then he got a no contact directive that said, You're being, you're coming to meet with the sexual misconduct investigator, and by the way, stay away from Jane. He knew exactly what it was about, and he certainly knew what it was about as the questioning went on. Again, there is no breach of contract by failing to provide a board hearing. That was not raised in the district court, and it's simply not true. Because Plano failed to present the district court with any evidence to support his claims of erroneous outcome at all, of gender discrimination based erroneous outcome, or a breach of contract, particularly given the deference to be shown case Western's decision making, the district court's grant of summary judgment should be affirmed. Members of the panel, I want to start where my friend left off with what the contract requires, and I'm looking at page 15 of the policy or the contract. It says that among the interim remedial actions, or I'm sorry, the interim actions that the university will take, there are three, A, B, and C. The first, notify the responder that a complaint has been made against them. The second, provide a copy of the university's sexual misconduct policy to both parties. It's in the contract that they're going to do this. It's undisputed that they didn't do it. It's also undisputed that when Mr. Doe came into Dr. Millikin's office. That's correct, your honor. He got the policy roughly a week before the hearing. The objective evidence says that he got the policy on February the 18th. The hearing was on February the 25th. These interviews were taking place before he ever got the policy. In the policy, again, it says he has the right to a support person and the right to not make statements. He had no idea he had those rights. I want to talk about the gender bias issue that was raised by my friend. Dr. Millikin, in no other Title IX case has there ever been anything like this, where the Title IX investigator wrote a doctoral dissertation within a year of conducting this investigation that focuses on the sexual risk-taking of college-age women, particularly when they're taken advantage of by socially extroverted, confident males. My client's a fraternity brother. In this particular case, Dr. Millikin made credibility determinations by inserting her own judgments into the investigative summary that it looked low and sounded like he was trying to control Jane Doe. Those are not the kinds of things you expect to see from an unbiased and neutral investigator. You think it's better to have somebody who doesn't know anything about the field, like having a math professor have the interview, or a physics professor, or somebody like that, rather than someone, I guess this is in the field of sociology or something like that? Your Honor, respectfully, I think that in a case like this, it does make some sense to have someone who's familiar with the field, but not someone who's demonstrated a history of viewing one side in favor of the other. I think that's what the dissertation shows, and I think it's evidenced by the way she authored her report. On top of that, John Doe testified in his deposition that her questions were accusatory and were leading, and that she tried to get him to, quote, skip steps in the process. That gets us back to the hearing choice, the administrative hearing versus the panel hearing. What we're asking this court to do is to give Mr. Doe the panel hearing that he deserves, the panel being the jury. He's presented enough evidence to show that his contract with Case Western was breached, that he has articulable doubt regarding the outcome, and that it was motivated by Dr. Milliken's gender bias. Thank you, Your Honor. Is that what you're seeking? You're seeking to send him back down for a hearing, not damages? Your Honor, I'm seeking remand so that he can have a trial on these issues. Thank you. We appreciate the argument that both of you have given, and we'll consider the case carefully. Thank you.